SEIDEMAN PRODUCTS CO. *v.* UNITED STATES (No. 4620) [1]

---

[1] C. A. D. 423.

United States Court of Customs and Patent Appeals, February 2, 1950

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Walter I. Carpeneti* of counsel) for appellant.

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument December 7, 1949, by Mr. George R. Tuttle and Mr. Donohue]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

In September 1946 appellant imported at the port of New York, from Peru, 10 cardboard cartons, each containing 48 seven ounce cans of tuna fish in oil. Duty was assessed on the importation at the rate of 22½ per centum ad valorem pursuant to the provisions of paragraph 718 (a) of the Tariff Act of 1930, as modified by the Mexican trade agreement, T. D. 50797, effective January 30, 1943.

Appellant protested against the said assessment of duty, claiming that the cans imported as containers are free of duty under paragraph 1615 (a) or (b), as being of American origin, or as provided by paragraph 1615 (g) relating to alterations and dutiable only upon the value or cost of "reforming" at the rate of 22½ per centum, or at the rate of 45 per centum under paragraph 718 (a) or paragraph 397,

respectively. The suit was tried in New York before the United States Customs Court, Third Division, and the facts were stipulated by the counsel for the parties, reading as follows:

I think that all of the essential facts, or most of them, can be stipulated, and I do offer to stipulate that the merchandise covered by this protest consists of tin cans imported from Peru as containers of tuna fish, and are assessed with duty at the rate applicable to their contents, namely, 22½% under 718 (a) of the Tariff Act of 1930; that the tops, bottoms, and bodies of these cans as described below were exported from Los Angeles on the Steamer Lookout on or about May 26, 1946 under the provisions of Section 10.8 of the Customs Regulations of 1943, and by use of Customs Form 4455; that in their condition as exported from the United States these cans consisted of (a) can bodies which had been notched and edged and with the side seam soldered so as to make a cylindrical form, and thereafter flattened to a narrow obrotund cross-section; (b) can tops and bottoms, circular in form, the edges of which had been curled and to which a sealing compound had been applied; that in Peru, by use of a machine especially designed for that purpose, the flattened bodies were reformed into cylinders by application of suction whereby the sides were partially forced apart and there was inserted an implement cylindrical in form and with one end cone-shaped. The can body was pushed over this cone onto the cylindrical portion, and by a process of rolling, the body became cylindrical. Thereupon, the ends of the body were flanged so as to permit the outer-edge portions of the bottoms and tops to be double-seamed. The bottom was then seamed on, the can was filled with tuna, and the top seamed on. After being thus filled with fish and closed, the cans of fish were packed in paper cartons and exported to the United States.

The record also contains Form 129, an invoice of American Goods Returned, together with an affidavit setting out that the cost in the country of exportation for "reforming" the cans to be U. S. $0.045 per can. A can of fish as imported, an empty can, and a collapsed can body with detached top and bottom are also in evidence as illustrative exhibits. All of 'the claims made in the protest were relied upon at the trial as well as here.

The trial court entered judgment, overruling the protest in accordance with its decision, C. D. 1161, and from the judgment, this appeal was taken.

The trial court—after noting the claims of counsel for appellant and the authorities claimed by them as supporting their contentions—held that the exported articles may not be properly considered as being in a "knocked-down condition"; that such articles did not represent containers complete within themselves and capable of being assembled into tin cans; that they are not entireties exported in a "knocked-down condition"; that they may not be held to be substantial outer containers exported empty and returned as the usual containers of merchandise; that the material exported did not consist of tin cans, and consequently the work done in Peru was not an alteration; and that under the tariff laws, articles made in the United States in order to get favored treatment must be exported for the purposes of altera-

tion, and that the articles in question were not exported for any such purpose.

It may be noted from what has been said herein, that the case was tried and decided by the trial court on the dutiability of tin cans. The judgment of the trial court is defended by counsel for appellee for reasons differing from those appearing in the court's decision.

It is contended by counsel for appellee that the commercial unit of the importation is a can of tuna fish, and that such unit must also be considered as the proper one for tariff purposes. It is stated in the brief for appellee that they were appraised in case units and advisorily classified and assessed with duty pursuant to the provisions of paragraph 718 (a), reading as follows:

Par. 718 (a) Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances, 30 per centum ad valorem. (reduced to 22½ per centum by the Mexican trade agreement, T. D. 50797.)

In the brief for appellee it is argued that the portion of the stipulation "assessed with duty at the rate applicable to their contents, namely 22½% under paragraph 718 (a) of the Tariff Act of 1930" needed to be clarified. It is argued that the cans as containers were not articles of commerce and that, not being merchandise, and because they are ordinary containers thereof, that duty could not be separately assessed against them without specific provision of law. They properly point out that containers of fish are not described, nor provided for, in the paragraph under which the imported merchandise was assessed.

The position of appellee is that no separate duty was levied upon the cans as such because they were part of the article described and provided for in paragraph 718 (a). Therefore, appellee strenuously urges that appellant has no right to claim by protest any refund of part of the duties, because, unless the cans and the fish were separately assessed for duty and were separate entities for tariff purposes, the claim of exemption from the provisions of paragraph 1615 (a) can not be considered. The pertinent part of the paragraph under which the vital claim of appellant is made reads as follows:

Par. 1615. (a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

(b) Steel boxes, casks, barrels, carboys, bags, quicksilver flasks or bottles, metal drums, and other substantial outer containers of domestic or foreign manufacture, exported empty and returned as usual containers or coverings of merchandise, or exported filled with products of the United States and returned empty or as the usual containers or coverings of merchandise, including shooks and staves produced in the United States when returned as boxes or barrels in use as the usual containers of merchandise.

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

Because we are in complete agreement with the judgment of the trial court, it seems unnecessary to discuss at any length the brief of counsel for appellee.

There can be no question but that the involved merchandise is squarely classifiable, as was determined by the collector. It is also clear to us that it is immaterial, as far as cost to the importer is concerned, whether or not merchandise was assessed with duty at its appropriate rate on the fish alone plus the same rate for the cans, or as a single unit, i. e., cans of fish.

The contention hereinbefore mentioned of the Government was not before the lower court, and counsel for appellant had no knowledge of it until shortly prior to the date upon which the appeal was heard. Naturally counsel for appellant was taken by surprise and upon request was permitted by the court to file a reply brief.

The papers in the case would indicate that the theory of the collector in making his classification was entirely based upon his opinion that the making of the tin articles into finished cans was a manufacturing process and thus resulted in an advance in value, or an improvement in condition, of the exported articles. It is shown in the pro forma invoice as follows:

10 ctns canned fish _____ $6. 00
Amer. cans & cartons _____ 1. 21
   (included in above price)

It further appears that the proper official made his usual notation as follows:

Fish and tins of foreign mfr.
   Par. 718 (a) 22½%
Cartons of American mfr.
Value 13¢ each—Par. 1615   $1.00
   (included in value of cans & cartons—total $1.21)

and rubber stamped on the same document we have

Appraiser—Sept. 9, 1946.
   For the purpose of estimating the amount of drawback, if any, paid on the merchandise described on this invoice please report          ,
         Cans & cartons
         Name of Manufacturer

The answer of the appraiser reads as follows:

Side, top & bottom of tin mfd. by American Can Co. in the USA and shipped collapsed and unassembled to Peru, where packer reformed the side and attached top and bottom.
   Cartons mfd. by California Containers Corp., Emeryville, Calif.

The cans and containers were set out on the original entry as being of American manufacture, and therefore free. Each of the three amendments to the entry discloses that the cans and containers were separately described and valued. The statement of appellant's addition or deduction in the last amendment has been checked in red ink by the examiner who advisorily classified the merchandise. The checks separate the cans and cartons from the fish. Therefore, in view of those circumstances, it is not strange that the case was prosecuted in the trial court on a theory which is now repudiated by counsel for appellee.

There can be no question but that the knocked-down cans were manufactured in the United States, and that they have been returned after having been exported. That they have been improved in value by a manufacturing operation so as to constitute usable cans, in our opinion, cannot be gainsaid. The exported articles were not sent to Peru for the purpose of repair or alteration, and therefore the value of repairs or alterations cannot be considered. The exported articles were not such containers as could be exported empty and returned as the usual containers or coverings of merchandise. Therefore, we conclude that viewing appellant's contention in the most favorable light, the tin cans of the imported article may not properly be held to come under the portion of paragraph 1615 (a), as contended for.

We find in the reply brief of appellant, a ruling by the Commissioner of Customs, dated April 18, 1949, 422.44, which relates to cans and reads in part as follows:

Although tinplate containers in use at the time of importation as the usual containers of merchandise are not treated for tariff classification purposes as imported merchandise, they can, and sometimes do, affect the amount of duties assessed. If the merchandise in such containers is entitled to free entry or is subject to duty as a specific rate not dependent upon value, the containers (whether foreign or American made) are generally exempt from duty. If, on the other hand, the merchandise in such containers is subject to an ad valorem rate of duty, the cost of the containers is usually included in the dutiable value of the merchandise in accordance with the provisions of section 402 of the tariff act, as amended. Thus, in the latter situation, the containers would in effect be assessed with duty on their cost at the rate applicable to their contents. *However, under a well recognized exception to this rule, the cost of the containers is excluded from the dutiable value of the merchandise when such containers are of United States manufacture and would be entitled to free entry under paragraph 1615 (a) if imported unfilled.* [Italics quoted.]

The portion of the quoted ruling in italics seems to be considered pertinent by counsel for appellant in their contention. However, containers were not exported to Peru, and certainly were not imported unfilled. It may be noted that in that ruling it is stated that when

merchandise in containers requires the assessment of an ad valorem rate of duty that the cost of the containers is usually included in the dutiable value of the merchandise.

We have noted with interest the various authorities cited by counsel for the parties herein, but we find that no useful purpose may be served by reviewing them. It is clear that if the cans in question are not dutiable under the claimed provisions of 1615, that the duty assessed by the collector, 22½ per centum on each unit of the entire shipment, is proper under paragraph 718 (a). From what has hereinbefore been said, it will be observed that determination of this case rests upon facts.

For the reasons hereinbefore set out, the judgment of the United States Customs Court is *affirmed*.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.